SKC

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Noor Jehangir, | No. CV-24-03030-PHX-DJH (DMF) |
| Plaintiff, | **ORDER** |
| v. | |
| Daniel East, et al., | |
| Defendants. | |

Plaintiff Noor Jehangir brought this civil rights action through counsel under 42 U.S.C. § 1983.  Defendants Tempe Police Officers Daniel East and Marra Guajardo filed a Motion to Dismiss Plaintiff's First Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. 18.)  The Motion is fully briefed.  (Docs. 21, 22.)  The Court will grant the Motion and dismiss this action with prejudice.

## I.    Background

In her original Complaint, Plaintiff asserted Fourth and Fourteenth Amendment unreasonable search/invasion of privacy claims against Defendants based on their alleged personal observations and video recording of Plaintiff's intermittently exposed lower body while she was on a hospital gurney after Defendants arrested her for shoplifting and took her to the emergency room (ER) for an apparent drug overdose.  (Doc. 1 ¶¶ 11−17.) Plaintiff relevantly alleged that Defendants placed their body-worn cameras (BWC) at the foot of her gurney, "intentionally pointed directly towards Plaintiff's genital area," and

they "continued recording while Plaintiff's hospital gown repeatedly opened to expose Plaintiff's genitalia." (*Id.* ¶ 17.) Plaintiff further alleged that, "as a result of Defendant Officers' actions," Plaintiff "suffered humiliation, embarrassment, indignation, as well as emotional and mental distress." (*Id.* ¶ 20.) On screening under 28 U.S.C. § 1915A(a), the Court found Plaintiff stated Fourth and Fourteenth Amendment claims and directed Defendants to answer the Complaint. (Doc. 4.)[1]

Defendants moved to dismiss the Complaint for failure to state a claim (Doc. 9). The Court dismissed Plaintiff's claims without prejudice, finding that Defendants were entitled to qualified immunity because their alleged conduct in the Complaint, supported by the BWC referred to in the Complaint, did not violate any clearly established rights of which a reasonable officer would have known. (Doc. 16 at 21.) The Court stated that, since dismissal was on qualified immunity grounds, and "Defendants' alleged conduct is already clearly set forth on the BWC relied on in the Complaint," amendment was likely futile. (*Id.* at 22.) However, because Rule 15(a) of the Federal Rules of Civil Procedure "advises the court that 'leave [to amend] shall be freely given when justice so requires,'" *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003), and it was not entirely certain Plaintiff could not amend her Complaint to state a claim that survived Defendants' qualified immunity defense, the Court gave Plaintiff 30 days to file an amended pleading, and Plaintiff timely filed the First Amended Complaint (FAC). (Doc. 17.)

## II.    Legal Standard

Dismissal of a complaint, or any claim within it, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) may be based on either a "'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121–22 (9th Cir. 2008) (quoting

---

[1] Plaintiff was in the custody of the Arizona State Prison Complex-Perryville when she filed this action, so the Court was statutorily required to screen the Complaint. (*See* Doc. 4 at 1 n.1.)

*Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990)).  In determining whether a complaint states a claim under this standard, the allegations in the complaint are taken as true and the pleadings are construed in the light most favorable to the nonmovant. *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007).  A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  But "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what . . . the claim is and the grounds upon which it rests."  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation omitted).  To survive a motion to dismiss, a complaint must state a claim that is "plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

When deciding a Rule 12(b)(6) motion, a court generally looks only to the face of the complaint and documents attached thereto.  *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).  If a court considers evidence outside the pleadings, it must convert the Rule 12(b)(6) motion into a Rule 56 motion for summary judgment.  *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003).  A court may, however, consider documents attached to the complaint or incorporated by reference in the complaint or matters of judicial notice without converting the motion to dismiss into a motion for summary judgment.  *Id*.

**III.    First Amended Complaint**

In the FAC, Plaintiff alleges the following relevant facts:

On December 8, 2022, Plaintiff was arrested for allegedly shoplifting.  (Doc. 17 (FAC) ¶ 11.)  During the arrest, Plaintiff exhibited signs of a drug overdose and was transported to the ER at Tempe St. Luke's Hospital, accompanied by Defendant Officers East and Guajardo.  (*Id.* ¶¶ 12−13.)

While Plaintiff received treatment in the ER, her clothing was removed from the lower part of her body, and her body was covered by a loose-fitting hospital gown. (*Id.* ¶ 14.) Plaintiff was handcuffed to a gurney and appeared to be incoherent from the effects of medications, drugs, and/or alcohol. (*Id.* ¶ 15.) Defendants were in the room with Plaintiff much of the time while she thrashed around on the gurney, and they were aware that her genitalia frequently became exposed and visible. (*Id.* ¶¶ 16−18.) Defendant Guajardo pulled Plaintiff's gown back over her body several times and even placed a sheet over her to cover her exposed genitalia, but Plaintiff's constant movement kept causing any covering placed on her to slip off. (*Id.* ¶ 19.) Defendants kept their BWCs recording throughout the entire time they remained in the hospital. (*Id.* ¶ 20.)

Plaintiff was initially in a larger hospital room, and Defendants stood at the end of the room nearest the head of the gurney, which prevented their BWC from viewing Plaintiff's exposed genitalia. (*Id.* ¶ 21.) Hospital staff later moved Plaintiff's gurney to a smaller room, and Defendants stood at the foot of the gurney, which allowed their BWC to record images of Plaintiff's genitalia when uncovered. (*Id.* ¶¶ 22, 23.) Defendants eventually left their BWC on top of a trash can near the foot of the gurney, pointed directly at Plaintiff, which allowed their cameras to film her from an angle that captured her frequently exposed genitalia. (*Id.* ¶¶ 23, 25.) The video shows a shelf at the opposite end of the room, closest to the head of the gurney, where Defendants could have placed their cameras to avoid filming Plaintiff's genitalia. (*Id.* ¶ 24.)

Tempe Police Department Order 17.105, Body Worn Camera (TPD Policy), in effect at the time, prohibits officers from recording a subject's exposed groin area and restricts recording in a medical facility. (*Id.* ¶ 26.) It states, "[w]hen possible, officers should avoid recording exposed areas of the body that could cause embarrassment or humiliation, such as exposed breast, groin, etc." (*Id.*) It also states, "[o]fficers shall not record while in a facility whose primary purpose is to provide medical and/or psychiatric services, unless responding to a radio call involving a suspect who is still present, or when officers are conducting investigatory follow up at the facility." (*Id.*) It further states,

"[o]fficers shall be aware of patients' rights to privacy when in hospital settings.  When recording in hospitals and other medical facilities, officers shall be careful to avoid recording persons other than the suspect."  (*Id.*)

Defendants did not have a legitimate law enforcement purpose for continually video recording Plaintiff in the hospital in her semi-conscious state.  (*Id.* ¶¶ 27−28.)  TPD Policy requires supervisors to review BWC video recorded by officers, so others within the police department presumably saw the video recording of Plaintiff's genitalia.  (*Id.* ¶30.)  As a result of Defendants' actions, Plaintiff suffered humiliation, embarrassment, indignation, and emotional and mental distress.  (*Id.* ¶ 31.)

**IV.    Discussion**

**A.    Fourth Amendment Legal Standard**

The Fourth Amendment protects the "right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" absent a warrant supported by probable cause.  U.S. Const. amend. IV.  "A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed."  *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).  "A search or seizure only violates the Fourth Amendment where the defendant has an actual (subjective) expectation of privacy . . . and that expectation is one that society is prepared to recognize as reasonable."  *United States v. George*, 987 F.2d 1428, 1432 (9th Cir. 1993) (citing *Minnesota v. Olson,* 495 U.S. 91, 95–96, (1990); *Katz v. United States,* 389 U.S. 347, 361 (1967) (Harlan, J., concurring)).

Inspecting a jail detainee's naked body constitutes a search for Fourth Amendment purposes.  *See Byrd v. Maricopa Cnty. Bd. of Supervisors*, 845 F.3d 919, 923 (9th Cir. 2017) (applying Fourth Amendment reasonableness standards to alleged opposite gender observations of jail detainees using the bathroom or showering); *see Brown v. Dickey*, 117 F.4th 1, 9 (1st Cir. 2024) ("A search occurs when a jail official inspects an incarcerated individual's naked body, regardless of whether the official set out to do so. . . . If [jail officials] inspected Brown's naked body in the hospital room, such an observation would constitute a search triggering Fourth Amendment scrutiny") (internal citation omitted).

Determining whether a search is reasonable in a particular case requires balancing "the need for the particular search against the invasion of personal rights that the search entails." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). Thus, courts must consider "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted. *Id.*; *see Byrd* 845 F.3d at 922 (citing *Bell* and applying this standard to a claim based on jail policy allowing female officers to observe male detainees showering or using the bathroom).

Similarly, "the Fourteenth Amendment protects a sphere of privacy, and the most 'basic subject of privacy . . . the naked body.'" *Vazquez v. Cnty. of Kern*, 949 F.3d 1153, 1162 (9th Cir. 2020) (alteration in original) (quoting *Hydrick v. Hunter*, 500 F.3d 978, 1000 (9th Cir. 2007)); *see also York v. Story*, 324 F.2d 450, 455 (9th Cir. 1963) (noting that "the security of one's privacy against arbitrary intrusion by the police is basic to a free society" and "[w]e cannot conceive of a more basic subject of privacy than the naked body"). Claims arising during arrest, however, are to be analyzed under the Fourth Amendment's reasonableness standard rather than the substantive due process standard. *Reed v. Hoy*, 909 F.2d 324, 329 (9th Cir. 1989) ("[C]laims arising before or during arrest are to be analyzed exclusively under the fourth amendment's reasonableness standard rather than the substantive due process standard"), *overruled on other grounds by Edgerly v. City & Cnty. of San Francisco*, 599 F.3d 946, 956 (9th Cir. 2010); *Fontana v. Haskin*, 262 F.3d 871, 881 (9th Cir. 2001) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) ("If a constitutional claim is covered by a specific constitutional provision, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process")); *cf. Graham v. Connor*, 490 U.S. 386, 394 (1989) (Fourth Amendment excessive force claim "must . . . be judged by reference to the specific constitutional standard which governs that right, rather than to some generalized 'excessive force' standard").

## B.     Failure to State a Claim

Defendants argue that Plaintiff fails to state a Fourth or Fourteenth Amendment

1   claim, and that they are entitled to qualified immunity because their alleged actions did not

2   violate any clearly established rights of which a reasonable officer would have known.

3   (Doc. 18 at 10−18.)

4                      **1.    Fourteenth Amendment**

5          As set forth above and in the Court's prior dismissal Order (Doc. 16 at 8−9), civil

6   rights claims that occur in the context of an arrest "are to be analyzed exclusively under

7   the fourth amendment's reasonableness standard rather than the [fourteenth amendment's]

8   substantive due process standard." *Reed*, 909 F.2d at 329.

9          In its prior Order, the Court analyzed Plaintiff's claims as Fourth Amendment

10  unlawful search claims.    The Court nonetheless cited to and included Fourteenth

11  Amendment invasion of privacy cases in its discussion of qualified immunity because it

12  found these cases embody the same principles at issue here and are therefore relevant to

13  "whether the constitutional question at issue is beyond debate." (Doc. 16 at 15.)  Because

14  this action was and continues to be based entirely on Defendants' alleged conduct during

15  Plaintiff's arrest, it presents only Fourth Amendment, not Fourteenth Amendment claims.

16  *See Reed*, 909 F.2d at 329; *Fontana v. Haskin*, 262 F.3d 871, 881 (9th Cir. 2001.  To the

17  extent Plaintiff attempts to reassert separate Fourteenth Amendment due process claims in

18  the FAC, she fails to state a claim, and the Court will summarily dismiss these claims.

19                      **2.    Fourth Amendment**

20         In its prior Order, the Court found that the allegations in the Complaint showed a

21  search under the Fourth Amendment.  (Doc. 18 at 7.)  The Court also rejected Defendants'

22  arguments that the "search"—in this case recording Plaintiff with their BWCs—was per se

23  reasonable because it occurred in a hospital examination room, where courts have routinely

24  held patients do not have a reasonable expectation of privacy.  (*See id.* at 9−10.)  The Court

25  explained that "the location where a search takes place is only one factor bearing on its

26  reasonableness," and that "the scope of the intrusion, the manner in which it is conducted,

27  and the justification for conducting it are likewise relevant." (*Id.* at 10 (citing *Bell*, 441

28  U.S. at 559)).

The Court further distinguished *United States v. George*, 987 F.2d 1428, 1432 (9th Cir. 1993), on which Defendants principally relied because, in *George*, the Ninth Circuit found that the intrusiveness of the search during an arrestee's hospitalization was reasonably justified to obtain evidence he had ingested illegal drugs; whereas, here, "there are no allegations Plaintiff was ever arrested on drug charges or any facts from which to infer Defendants needed a video record of her in the hospital as evidence of such." (*Id.* at 10.)  The court further found that, "[c]onstruing the facts in Plaintiff's favor, there was no need to film Plaintiff in her semi-conscious state to obtain evidence of shoplifting." (*Id.*)

Defendants also argued that activating their BWC during arrests is necessary to provide a record of an arrestee's time in police custody, which may be needed to counter possible false accusations against them; however, the Court stated that "[e]ven though Defendants may ultimately be able to show that doing so here was objectively reasonable, at this stage, the Court must view the facts and video in a light most favorable to Plaintiff," and that, when "[a]pplying this standard, it is plausible to infer that video recording Plaintiff while she was naked from the waist down and frequently exposed on the hospital gurney was not reasonably justified by any equivalent law enforcement interest." (*Id.* at 10−11.)  The Court ultimately concluded that, because "it is plausible to infer that the scope and manner of the intrusion here was not reasonably justified by an equivalent government interest," Plaintiff adequately stated a Fourth Amendment claim. (*Id.* at 12 (citing *Bell*, 441 U.S. at 559).)

Plaintiff's changes in the FAC do not require the Court to reconsider this finding. Compared to the original Complaint, the FAC revises or adds allegations about Defendants' video recording of Plaintiff that make it more consistent with the BWC evidence, which the Court already set forth in detail (Doc. 16 at 3−7) and considered in its prior Order.[2]  The only other substantive changes in the FAC are its new allegations about

---

[2]  The Court considered this evidence because Plaintiff did not dispute the authenticity of the BWC files Defendants produced, and the BWC video was referenced in the Complaint and central to Plaintiff's claims.  *See Ritchie*, 342 F.3d at 907–08; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 669 (9th Cir. 2001) ("A court considering a

the TPD Policy.  (*See* Doc. 17 ¶¶ 26, 30.)  These additions do not change the relevant facts about what occurred or alter the Court's determination that, construing these facts in her favor, Plaintiff states a plausible Fourth Amendment violation.

### C.    Qualified Immunity

The only remaining issue before the Court is whether, in view of Plaintiff's new allegations in the FAC, Defendants are entitled to qualified immunity.  Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  In deciding if qualified immunity applies, the Court must determine: (1) whether the facts alleged show the defendant's conduct violated a constitutional right; and (2) whether that right was clearly established at the time of the violation.  *Pearson v. Callahan*, 555 U.S. 223, 230-32, 235–36 (2009) (courts may address either prong first depending on the circumstances in the case).

The plaintiff has the burden to show that the right was clearly established at the time of the alleged violation.  *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002); *Romero v. Kitsap Cnty.*, 931 F.2d 624, 627 (9th Cir. 1991).  For a right to be clearly established there does not have to be a case directly on point; however, "existing precedent must have placed the statutory or constitutional question beyond debate."  *White v. Pauly*, 580 U.S. 73, 79 (2017) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2017)).  Clearly established law "must be particularized to the facts of the case," and "should not be defined at a high level of generality."  *White*, 580 U.S. at 79 (quotation and citation omitted).  Thus, "the contours of the right must be sufficiently clear that at the time the allegedly unlawful act is [under]taken, a reasonable official would understand that what he is doing violates that

---

motion to dismiss may take notice of . . . materials necessarily relied upon in the pleadings where authenticity is not contested"); *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013) ("Because the subpoenas are critical to Sam's lawsuit, and there is no factual dispute as to their contents, we may properly consider the appearance and content of the subpoenas at this stage in the litigation; *Esco v. City of Chicago*, 107 F. 4th 673, 678−79 (7th Cir. 2024) (applying this principle to video exhibits).

right," and "in the light of pre-existing law[,] the unlawfulness must be apparent." *Mendoza v. Block*, 27 F.3d 1357, 1361 (9th Cir. 1994) (quotations omitted). Therefore, regardless of whether the constitutional violation occurred, the officer should prevail if the right asserted by the plaintiff was not "clearly established" or the officer could have reasonably believed that his conduct was lawful. *Romero*, 931 F.2d at 627.

In a few cases, qualified immunity may be resolved at an early stage of the litigation. *See Saucier v. Katz*, 533 U.S. 194, 200 (2001). But this is only when the underlying material facts are not in dispute and the qualified immunity question rests solely on the state of the law. *See Conner v. Heiman*, 672 F.3d 1126, 1130– 31 (9th Cir. 2012).

As with the original Complaint, the material facts in the FAC are not in dispute because the video evidence upon which Plaintiff principally relies for her claims provides a clear record of Defendants' alleged unconstitutional filming of Plaintiff. Plaintiff's additional allegations from the TPD Policy are also not subject to material dispute because Plaintiff attached a copy of this policy to the FAC, and Defendants do not dispute its authenticity. It is therefore proper to address qualified immunity at this stage. *See Saucier*, 533 U.S at 200 ("Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive"); *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) ("[W]e repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation").

To show that Defendants are not entitled to qualified immunity, Plaintiff relies primarily on cases the Court already distinguished in its prior dismissal Order, distinguishing the facts therein to the facts in this action, to have placed the unconstitutionality of Defendants' conduct beyond dispute.

For example, Plaintiff once again relies on *York v. Story*, 324 F.2d 450 (9th Cir. 1963), in which a female assault victim—not an arrestee—went to the police station to file charges. *Id.* at 452. At the station, a male officer told her he had to take photos of her, and he then took her into a private room, locked the door, instructed her to undress and pose

for photos in various indecent positions even though she objected and said her bruises would not show up on the camera, and he later distributed the photos to other male law enforcement officers, who copied and distributed them to other officers in the police department. *Id.* Addressing these facts, the Ninth Circuit found that taking and distributing the photos without a legitimate law enforcement purpose "constituted an arbitrary intrusion upon the security of [the victim's] privacy, as guaranteed to her by the Due Process Clause of the Fourteenth Amendment." *Id.* at 456. As this Court previously stated when distinguishing *York*,

> The facts in *York* are too far removed from those presented here to have placed a reasonable officer in Defendants' positions on notice that passively filming Plaintiff with their BWCs as they did here was unlawful. First, unlike the female assault victim in *York*, who voluntarily came to the police station and was not under arrest, Plaintiff was an arrestee in police custody in a hospital emergency room, where she did not have a reasonable expectation of privacy. Plaintiff also does not allege that Defendants removed or told her or anyone else to remove her clothing, directed her to pose in provocative ways, or did anything to cause her exposure. Further, it is evident from the BWC that hospital staff and Defendant Guajardo—an officer of the same sex—frequently walked over to Plaintiff and covered her back up with sheets after she kicked off her coverings, thereby limiting the exposure of her naked body. There are also no allegations, as there were in *York*, that Defendants ever showed the BWC video to anyone for any unlawful purpose.

(Doc. 16 at 16.)

Plaintiff now argues that the additional allegations in the FAC that the BWC video was likely viewed by others in the Tempe Police Department "matches the *York* facts in which the Court already established that such conduct constitutes a constitutional violation." (Doc. 21 at 12.) This argument misses the mark.

In *York*, the police officer circulated nude photos of the victim to other police officers who then made additional copies using law enforcement equipment and further distributed them within the police department with no legitimate law enforcement purpose;

whereas here, Plaintiff alleges only that police department policy dictates that supervisors review BWC videos recorded by officers. (SAC ¶ 30.) Plaintiff does not allege that anyone, prior to this litigation, ever viewed the BWC video of Plaintiff. Even inferring that a supervisor did so, as required under TPD Policy, such an inference equally supports that doing so was not arbitrary but for a legitimate law enforcement purpose. Additionally, the policy does not state that supervisors are *required* to view all BWC video recorded by officers but only that "[s]upervisors may have the ability to immediately resolve questions/concerns or complaints by reviewing video captured by the BWC," and that, "it shall be deemed a violation of this policy for a supervisor to review recordings for the sole purpose of searching for violation of department policy or law *not related to a specific complaint or incident*." (Doc. 17-2 (BWC Policy § E(2)(d) & (f)).)

Elsewhere, the TPD Policy states that the "purpose of the body worn cameras is to:

a.    Promote greater transparency and accountability;
b.    Document evidence for criminal investigations and prosecutions, internal or administrative investigations, and civil litigation;
c.    Assist in resolving complaints against officers, including false allegations by members of the public; and
d.    Enhance training.

(*Id.* at 1 (Policy § B(1)(a−(d)).) These facts, which the Court may consider because the TPD Policy is attached to and relied on in the FAC, do not support that Defendants' use of their BWC or any subsequent viewing of that BWC—if it occurred—was arbitrary and lacked a legitimate law enforcement purpose. Such facts bear no resemblance to the arbitrary taking and wide distribution of nude photographs in *York*. Consequently, nothing in *York* would have placed officers in Defendants' positions on notice that their actions violated any constitutional rights of Plaintiff of which a reasonable officer would have known.

Plaintiff also relies on other cases the Court previously addressed in which, among other factors, the Ninth Circuit considered policy violations relevant to finding an officer was not entitled to qualified immunity. In *Sepulveda v. Ramirez*, a state parolee reported

to a parole office to produce a urine sample for drug testing, and while she was in the bathroom stall partially unclothed and seated on the toilet, a male parole officer walked into the stall, and over the parolee's objections, remained there while she finished urinating, cleaned herself, and dressed.  967 F.2d 1413, 1415 (9th Cir. 1992).  As an initial matter, the Ninth Circuit found that "the right to bodily privacy" was firmly established in *York* and *Grummet v. Rushen*, 779 F.2d 491, 494 (9th Cir. 1985) (citing *York* for the proposition that "in this circuit, the interest in not being viewed naked by members of the opposite sex is protected by the right of privacy").  *Sepulveda*, 967 F.2d at 1415.  The court also noted that the California Department of Corrections policy required that all unclothed searches be performed by a correctional officer of the same sex and provided alternate procedures where same-sex observation was not possible. *Id.* at 1416.  Under these facts, the Ninth Circuit found the officer was not entitled to qualified immunity because "no reasonable officer could believe that the actions allegedly taken by Officer Ludwig were lawful."

In its prior dismissal Order, the Court found *Sepulveda* was not on point with the facts presented here, stating,

> *Sepulveda* did not involve an arrestee in police custody in a hospital room where staff and others could freely come and go, so it gives no specific guidance about the rights that adhere in this context. . . .
>
> *Sepulveda* simply does not speak to whether the right to bodily privacy is violated where, as here, police officers passively observe and/or position their BWCs to make a video record of an arrestee in a hospital room while she unconsciously and inadvertently exposes sensitive parts of her body to their cameras.  This conduct is also far different from intentionally entering a private bathroom stall against the objections of the occupant and insisting on staying and watching while she produces a urine sample.  Further, Plaintiff does not allege that Defendants' conduct violated any applicable police policies such as factored into the court's reasoning in *Sepulveda*. . . .
>
> Even though a case does not need to be directly on point to show that a right is clearly established, "existing precedent"

must be such that it places the constitutional question "beyond debate." *White*, 580 U.S. at 79. The facts and analysis in *Sepulveda* are simply too far removed from the material facts in this action to have done so here.

(Doc. 16 at 17−18.)

Plaintiff now focusses exclusively on the Court's statement that, unlike in *Sepulveda*, she did not allege that Defendants violated any applicable policies, and she argues that, since she now alleges facts showing Defendants violated TPD Policy, "*Sepulveda*'s emphasis on the significance of a policy violation supports Plaintiff's position that Defendants are not entitled to qualified immunity." (Doc. 21 at 13.)

This argument fails for several reasons. First, *Sepulveda* does not stand for the proposition that officers lose qualified immunity whenever their actions violate law enforcement policy, nor would such a proposition comport with applicable law. It is well established that an internal policy violation on its own does not equate to the violation of a constitutional right. *See Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009) (departmental regulations do not establish a federal *constitutional* violation) (emphasis in original); *see also Davis v. Scherer*, 468 U.S. 183, 194 & n.12 (1984) ("Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision").

Plaintiff's argument is additionally misplaced because the facts she alleges do not demonstrate an obvious policy violation. Plaintiff selectively cites to two provisions of the TPD Policy, the first of which states, "[w]hen possible, officers should avoid recording exposed areas of the body that could cause embarrassment or humiliation," and the second of which states "[o]fficers shall not record while in a facility whose primary purpose is to provide medical and/or psychiatric services, unless responding to a radio call involving a suspect who is still present, or when officers are conducting investigatory follow up at the facility." (FAC ¶ 26 (quoting TPD Policy §§ 10(g) & (h)).) The latter provision goes on to say, "[o]fficers shall be aware of patients' rights to privacy when in hospital settings [and] shall be careful to avoid recording persons other than the suspect." (*Id.* (quoting TPD Policy § 10(h)).)

Defendants argue that the first provision states only that "[w]hen possible" officers are to avoid recording sensitive areas, such as the groin; it does not forbid such actions. (Doc. 18 at 17.)  They further point out that the BWC video shows Defendants repeatedly attempted to cover Plaintiff to decrease her inadvertent exposure of the lower half of her body, but Plaintiff continued to kick off her coverings.  (*Id.*)  Based on these facts, Defendants argue that, unlike in *Sepulveda*, "the policy does not mean the Defendants lacked a reasonable belief that their actions were lawful."  (*Id.*)

Defendants do not specifically address the second cited provision of the TPD Policy, which restricts officers from filming in hospitals, "unless responding to a radio call involving a suspect who is still present, or when officers are conducting investigatory follow up at the facility."  However, they point to other policy provisions, which they argue *require* officers to activate their BWC when transporting an arrestee to a detention facility, and they argue this requirement applied here because Plaintiff was an arrestee in their custody on the way to jail.  (*Id.*)

One relevant provision of the TPD Policy states, "BWC *shall* be activated by officers transporting any prisoner until the custody of the prisoner is transferred to a detention facility."  (Doc. 17-2 at 9 (TPD Policy § 9(b)(1)) (emphasis added).)  This provision comports with other provisions of the TPD Policy already cited above, which state that the purpose of using a BWC is to "[p]romote greater transparency and accountability," "[d]ocument evidence for . . . internal or administrative investigations, and civil litigation," and "[a]ssist in resolving complaints against officers" (*id.* at 1 (TPD Policy § B(1)(a)–(c))—all interests that are reasonably served by fully documenting an arrestee's time in police custody prior to her detention in a jail facility.

At a minimum, the above provisions show that Defendants could have reasonably believed that continually recording Plaintiff in the hospital, while simultaneously taking steps to cover the lower half of her body when they saw she was exposed, was consistent with their obligations under the TPC Policy.  Absent any caselaw directly on point that would show otherwise, the Court cannot conclude that "no reasonable officer could believe

1    [these actions] were lawful." *Sepulveda*, 967 F.2d at 1416.

2        Plaintiff cites to additional district court or out-of-circuit cases that the Court did

3    not previously address; however, none of these cases is binding precedent, and even if they

4    were, the facts in these cases are too unlike those presented in this action to have placed

5    the unconstitutionality of Defendants' conduct beyond dispute.

6        One of these cases, *Meyer v. County. of San Diego*, No. 21-CV-341-RSH-BLM,

7    2025 WL 449747 (S.D. Cal. Feb. 10, 2025), postdates Plaintiff's claims in this action, so

8    it could not have placed Defendants on notice of any potential constitutional violations

9    relevant to their alleged conduct.  While acknowledging this, Plaintiff relies on *Meyer*'s

10   finding that defendant officers who surreptitiously videotaped a child's hospital room

11   without a warrant were not entitled to qualified immunity because "[m]ultiple Ninth Circuit

12   decisions have held that video recording individuals without a warrant constitutes a

13   violation of the Fourth Amendment in similar locations to the private hospital room at issue

14   here."  *Id.* at *12.  *Meyer* goes on to cite two prior Ninth Circuit cases that found the

15   warrantless video surveillance of a hotel room and an office constituted Fourth Amendment

16   violations.  *Id.*  Without addressing the specifics of either of these cases, Plaintiff argus

17   that, because they were decided in 1988 and 2000, "these cases also satisfy the 'clearly

18   established' standard in the present case."  (Doc. 21 at 15.)

19       In making this argument, Plaintiff overlooks that, to be clearly established, a right

20   "must be particularized to the facts of the case," and "should not be defined at a high level

21   of generality."  *White*, 580 U.S. at 79.  Moreover, even at a high level of generality, the

22   right of an individual who has not been arrested and is not in police custody to be free from

23   surreptitious, warrantless video surveillance—whether it be in a hotel room, office, or

24   hospital room—does not apply here.  Although she was in the ER, Plaintiff was openly

25   recorded on police BWC, not surreptitiously surveilled with hidden cameras.  Further, the

26   recording took place for a limited period while Plaintiff was in police custody.

27       The remaining cases upon which Plaintiff relies are equally inapplicable to her facts

28   and likewise fail to establish that Defendants violated any constitutional rights of which a

reasonable officer would have known.  *See Brannum v. Overton Cnty. Sch. Bd.*, 516 F.3d 489, 498−99 (6th Cir. 2008) (surreptitious video surveillance of minor students dressing and undressing in school locker room unconstitutional); *Colbruno v. Diggins*, No. 17-CV-01072-WYD-MJW, 2018 WL 10215848, at *9 (D. Colo. Jan. 31, 2018), *aff'd sub nom. Colbruno v. Kessler*, 928 F.3d 1155 (10th Cir. 2019) ("parading someone naked in a public place without a reasonable justification" violated constitutional privacy protections of which a reasonable official would have known); *Hill v. McKinley*, 311 F.3d 899, 903−904 (8th Cir. 2002) (leaving female prisoner secured to a restraint board, naked and spread-eagled, in the presence of male officers for a significant period of time was unconstitutional).[3]  The Court need not discuss these additional cases in detail because, apart from seizing upon selective, incidental similarities—such as the use of video cameras, a subject being temporarily clothed in a hospital gown, or the exposure of a subject's genitals—Plaintiff fails to draw any substantive correlations between the facts and circumstances in these cases and the facts alleged here.  Put simply, none of these cases involved officers passively filming an arrestee in their custody who occasionally and inadvertently exposed sensitive parts of her body to the camera; nor would any of these cases have put a reasonable officer in Defendants' positions on notice that such conduct under the facts alleged in the FAC constitutes a federal or constitutional violation.

Finally, Plaintiff argues that even without a case directly on point, the Court should deny qualified immunity to Defendants because their actions were so outrageous that any reasonable officer would have known they violated Plaintiff's constitutional rights. (Doc. 21 at 9−10.)  Plaintiff relies on *Hope v. Pelzer*, 536 U.S. 730, 738 (2002), for the

---

[3] Despite this finding, *Hill* went on to find that the defendant officers were entitled to qualified immunity because, in light of prior caselaw showing prisoners "are entitled to very narrow zones of privacy, and circumstances may warrant the most invasive of intrusions into bodily privacy," the court could not conclude that "it was clearly established in 1996 that a highly intoxicated, loud and violent prisoner could not constitutionally be restrained naked outside the view of all but a small number of guards."  311 F.3d at 905.

proposition that, in particularly egregious circumstances, a case directly on point is not required to put officers on notice that their actions violate a constitutional right.

In *Hope*, the Supreme Court stated that "officials can still be on notice that their conduct violates established law even in novel factual circumstances" and that, "[a]lthough earlier cases involving 'fundamentally similar' facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding."[4]  Similarly, in *Fils v. City of Aventura*, the Eleventh Circuit opined in the Fourth Amendment excessive force context, "[c]oncrete facts are generally necessary to provide an officer with notice of the 'hazy border between excessive and acceptable force.'  But, where the officer's conduct is so outrageous that it clearly goes 'so far beyond' these borders, qualified immunity will not protect him even in the absence of case law."  647 F.3d 1272, 1291–92 (11th Cir. 2011) (internal citations omitted).

Plaintiff fails to show that Defendants alleged conduct in this action was so egregious that, even without a case directly on point, a reasonable officer in Defendants' positions would have known his or her actions violated a constitutional right.  Plaintiff relies, in part, on Defendants' alleged violation of their own department policy to show that the unconstitutionality of their actions was obvious.  As previously discussed, however, it is not clear from the TPD Policy that Defendants violated department policy by continually recording Plaintiff while she remained an arrestee in their custody prior to detention. Even if they did, a policy violation on its own is insufficient to show a constitutional violation. *See Cousins*, 568 F.3d at 1070.

Plaintiff also argues that Defendants' conduct violated Arizona law, which prohibits the filming of another person without that person's consent when done either:

/ / / /

---

[4] In *Hope*, prison officials handcuffed a disruptive prisoner to a hitching post, after he had already been subdued, handcuffed, and placed in leg irons, and they left him chained to the post while being taunted in the hot sun with minimal water and no bathroom breaks for 7 hours.  536 U.S. 730, 734−35.  Under these circumstances, the Supreme Court found "the Eighth Amendment violation is obvious."  *Id.* at 738.

1. In a restroom, bathroom, locker room, bedroom or other location **where a person has a reasonable expectation of privacy and the person** is urinating, defecating, undressing, **nude** or involved in . . . sexual contact" or

2. **In a manner that directly or indirectly captures or allow the viewing of the person's genitalia**, buttock or female breast, whether clothed or unclothed that is not otherwise visible to the public."

(Doc. 21 at 10 (quoting Ariz. Rev. Stat. § 13-3019(A)) (emphases added by Plaintiff).).

The statute makes an exception for law enforcement, saying it does not apply to "[p]hotographing, videotaping, filming or digitally recording by law enforcement officers **pursuant to an investigation, which is otherwise lawful**." (*Id.* (quoting Ariz. Rev. Stat. § 13-3019(C)(3)) (emphasis added by Plaintiff).)

Plaintiff argues that this statute prohibited the Defendants BWC recordings because they were recorded in a hospital, where Plaintiff impliedly argues through her use of bolded text that she had a reasonable expectation of privacy, and "the video of Plaintiff captured by the Defendant Officers was not recorded "pursuant to an investigation, which is otherwise lawful." (*Id.* at 21.)

These arguments are misplaced because, as the Court repeatedly found in its dismissal Order, an individual does not generally have a reasonable expectation of privacy in a hospital room; nor was such an expectation reasonable here, where Plaintiff was placed on a hospital gurney and brought to two different curtained examination rooms, which were frequently open to the outside hallway, and where police, fire department, and hospital staff were free to—and frequently did—come and go. (*See, e.g.*, Doc. at 9−10, 11, 16, 19.)

Additionally, Defendants plausibly argue that the use of their BWCs in this context is exempted in the Arizona criminal statute because "[t]he validity of Plaintiff's arrest for shoplifting and her detention while receiving medical treatment are not in dispute." (Doc. 18 at 18.)  Although Defendants do not specifically argue that their recoding was "pursuant to an investigation, which is otherwise lawful" within the meaning of the statute, the Court need not parse whether this clause includes filming a subject throughout the

duration of her time in police custody while in a hospital pursuant to a lawful arrest because it is enough that a reasonable officer in Defendants' positions could have believed the exception applied. *Romero*, 931 F.2d at 627.  Moreover, as already discussed, the violation of a state statute, like the violation of internal police department policy, does not equate to a constitutional violation or negate a finding of qualified immunity that otherwise applies. *Davis*, 468 U.S. at 194.

Finally, Plaintiff has not shown that, even if Defendants violated internal police department policy and/or Arizona law, the facts alleged are so egregious as to constitute an obvious constitutional violation.  As the Court previously found based on its thorough review of the video (*see* Doc. 16 at 3−7), which it incorporates here,

> Defendants did not enter a bathroom stall with Plaintiff or observe her urinating or showering, both of which necessitate partial or total nakedness and occur in spaces where there is a high expectation of privacy.  Moreover, the video evidence in this case belies that Defendants intentionally observed Plaintiff's naked body or pointed their BWCs directly at her genitalia.  Instead, when Defendant East was in the room, he mostly engaged in other activities with his back turned. Defendant Guajardo was only intermittently in the room, and during those times, when it appeared that Plaintiff had shaken off her coverings, Guajardo covered her back up.  Also, when Defendants were outside the room, they left their BWCs in stationary positions along an available wall, and although the cameras were directed toward the foot end of Plaintiff's gurney, they also filmed the surrounding area and general activities in the room.

(Doc. 16 at 20−21.)

Absent existing precedent showing that such conduct constitutes an unlawful search or an unreasonable invasion of privacy in violation of federal or constitutional law, the Court is not persuaded that Defendants' alleged unconstitutional conduct here is so egregious that no reasonable officer could have believed this conduct was lawful. *Romero*, 931 F.2d at 627.  The Court will dismiss Plaintiff's FAC for failure to state a claim based on qualified immunity.

**IT IS ORDERED:**

(1)     The reference to the Magistrate Judge is **withdrawn** as to Defendants' Motion to Dismiss (Doc. 18).

(2)     Defendants' Motion to Dismiss (Doc. 18) is **granted**, and the action is **dismissed** with prejudice for failure to state a claim on qualified immunity grounds; the Clerk of Court is directed to **enter judgment** accordingly.

Dated this 12th day of November, 2025.

Honorable Diane J. Humetewa
United States District Judge